UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROSEMARY VANDECAR,

    Plaintiff,

v.

CHARLES DANIELS, *et al.*,

    Defendants.

Case No. 2:20-cv-2150-GMN-BNW

**SCREENING ORDER**

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections (NDOC), has filed an application to proceed *in forma pauperis* (ECF No. 5), has paid the full filing fee of $402, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1-1), and moves for appointment of counsel (ECF No. 1-4). The Court will deny the motion for appointment of counsel without prejudice. As Plaintiff has paid the full filing fee, the Court will deny Plaintiff's application to proceed *in forma pauperis* as moot. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I. SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings, however,

must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  If a complaint is dismissed under § 1915(e), the court will give leave to amend the complaint with directions as to curing its deficiencies unless it is clear from the face of the complaint that the deficiencies cannot be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  The court may dismiss a complaint for failure to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

2

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The allegations must cross "the line from conceivable to plausible." *Id., at* 680.

In making this determination, the court takes as true the allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp*., 74 F.3d 955, 957 (9th Cir. 1996). In doing so, the Court holds the allegations of a *pro se* complainant to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Twombly*, 550 U.S. at 555. Allegations that "are no more than mere conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. Factual allegations that "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim are conclusory and not entitled to the assumption of truth. *Id.*, at 681.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint stops short of the line between probability and the mere possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678. A claim is "plausible" if the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT

In her complaint, Plaintiff sues multiple defendants arising from several different incidents from February 2018 through November 2020 at the Florence McClure Women's Correctional Center (FMWCC). ECF No. 1-1 at 1, 11-41. Plaintiff sues Defendants James Dzurenda (the director of NDOC), Harold Wickham (deputy director of operations at NDOC), Kim Thomas (deputy director of programs at NDOC), Brian Williams (deputy director of programs at NDOC), Michael Minev (medical director at NDOC), Dwight Neven (warden at FMWCC), Renee Baker (warden at FMWCC), William Hutchings (warden at FMWCC), Jerry Newell (warden at FMWCC), Ronald Oliver (associate warden of operations at FMWCC), Gabriela Garcie-Najera (associate warden of operations at FMWCC), Jennifer Nash (associate warden of operations at FMWCC), Lelani Flores (director of nursing at FMWCC), P. Gang (investigator at FMWCC), J. Jones (investigator general / supervisor at NDOC), Dario Sanchez (lieutenant at FMWCC), A. Salvage (lieutenant at FMWCC), Karissa Currier (sergeant at FMWCC), Dean Medeiras (senior correctional officer at FMWCC), Helen Peterson (caseworker at FMWCC), N. Holston (caseworker at FMWCC), M. Velesco (correctional officer at FMWCC), A. Trujillo (correction officer at FMWCC), Rivera (correctional officer at FMWCC), Vanessa

4

Haralson (correctional officer at FMWCC), E. Rojas (correctional officer at FMWCC), M. Sestrillo (nurse at FMWCC), Dr. Leaks (contract optometrist at FMWCC), M. Moran (correctional officer at FMWCC), Theresa Wickham (chief of nursing at NDOC), and G. Baumgras (senior correctional officer at FMWCC). Plaintiff asserts six counts and seeks monetary, declaratory and injunctive relief. *Id.* at 1, 44-46.

The following are Plaintiff's allegations of fact that the Court assumes, for purposes of screening the complaint, as true.[1] Plaintiff was assigned to the FMWCC law library from May 28, 2013, until December 20, 2019. ECF No. 1-1 at 14. At times, she was the only inmate worker. *Id.* Plaintiff was required to submit a written test, be interviewed, and be approved by the Full Classification Committee. *Id.* Cynthia Ruiz[2] was hired in October 2014 and supervised Plaintiff. *Id.* Plaintiff was removed from this work assignment, and given a major disciplinary charge, after a drug test with no opportunity for retest. *Id.* at 15, 18. Plaintiff was placed into segregation. *Id.* Plaintiff has a "7-year record of zero disciplinary history." *Id.* at 16.

Plaintiff made several attempts to discuss concerns of escalating abuses and harassment with Defendants Neven, Oliver, Baumgras, H. Wickham, Nash, Sanchez and

---

[1] Plaintiff's 47-page complaint largely consists of conclusory, vague, overly broad, or argumentative assertions and speculative conjectures. For example, Plaintiff alleges numerous defendants "used command influence + abuse of power in violation of NDOC Administrative Regulations (AR), Operational Procedures (OP), by bending / making rules, memos, + exceptions to manipulate desired outcomes + otherwise escape detection, manipulate the Prison Rape Elimination Act (PREA) protocols to keep issues + reporting pristine, exercised abuses of NDOC's 'firm, fair, + consistent' policy in AR339 – Employee Code of Conduct." ECF No. 1-1 at 15. A plaintiff must provide more than mere labels and conclusions. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The Court has not recited these assertions and speculations as they are not entitled to an assumption of truth in determining whether Plaintiff has stated a claim.

[2] It does not appear that Ruiz is a defendant in this matter.

Salvage.  *Id.* at 17.  Plaintiff was advised multiple time to continue to report concerns to Ruiz.  *Id.*  Plaintiff was told "she wasn't liked because she was 'too smart' and 'when you work for a 'hard ass' for a long time, word gets around the yard + fells [sic] to you.'"  *Id.*  Plaintiff was directed "by Defendants Garcia-Najera + Peterson to, in effect, lie about the nature of 'meetings' Plaintiff was called to."  *Id.*

On December 20, 2019, Defendants Oliver and Holston made an entry in Plaintiff's NOTIS file "to the effect, 'this inmate is not in any trouble.'"  *Id.*  at 18.

Plaintiff was placed into a segregated unit known as the "jungle" and placed in a twelve-person cell.  *Id.* at 19.  She was kept in the jungle for longer than the 90-day required period.  *Id.*

Defendant H. Wickham responded to a grievance filed by Plaintiff.  *Id.*

Defendant H. Wickham and Plaintiff had a phone call on June 22, 2020, in which Plaintiff was asked what she wanted by attempting to grieve.  *Id.*  Wickham stated to Plaintiff that "he didn't believe 'it' would stand up in court if Plaintiff were to try, and then stated 'you will never return to the law library.'"  *Id.* at 20.  Defendants Nash and Salvage were present during the phone call.  *Id.*  Plaintiff's disciplinary appeal was still under review by Wickham.  *Id.*

Defendant Garcia-Najera is supervised by Defendants Williams, Thomas, H. Wickham, Neven, Baker, Hutchings and Howell.  *Id.* at 21.  Garcia-Najera holds a leadership role.  *Id.*

Plaintiff believes acts toward her are attributable "to a long-standing pattern of arbitrariness + retaliation against law library Supervisor Ruiz."  *Id.*

In August 2020, NDOC officials pulled Administrative Regulation 339 – Employee Code of Conduct, from the facility, law library and the NDOC website.  *Id.* at 22.

In September 2020, Garcia-Najera interrupted Plaintiff's scheduled law library appointment and disrupted the law library when she abused Plaintiff and Ruiz in the presence of an inmate worker.  *Id.*

On January 13, 2020, at about 10:15 a.m., Plaintiff was escorted by Franklin to the custody of Defendant Velesco.  *Id.* at 23.  Plaintiff assumed she was being transported for a medical procedure.  *Id.*  Plaintiff was informed of a request and order for 'probable cause.'  *Id.*  Plaintiff provided a urine sample in view of Velasco.  *Id.*  Velasco has attested that Plaintiff was in her full view and custody while giving the sample.  *Id.* at 25.  Plaintiff did not drink water and was never out of Velasco's custody.  *Id.* at 23.  Plaintiff did not know she was going to have to submit a urine sample.  *Id.*  Plaintiff does not have any history of substance use or abuse since she has been at FMWCC.  *Id.* at 23-24.  Plaintiff was kept in a holding cell until 3:30 p.m.  *Id.* at 24.

Velasco moved the urine sample to a back room.  *Id.*  The sample was sent to Redwood Toxicology Laboratory for analysis.  *Id.*  Either Velasco or Defendant Currier received an adverse report from Redwood that the urine sample had a "low creatine" level.  *Id.*  Either Velasco or Currier contacted FMWCC medical staff to determine whether Plaintiff was taking any medications that could contribute to a "low creatine" level in the urine sample.  *Id.*  Defendants received a response that Plaintiff was not taking medications that could affect the outcome.  *Id.*  Currier wrote a major disciplinary report against Plaintiff for an MJ44, failure to submit a drug/alcohol test.  *Id.*

On January 18, 2020, Defendant Baumgras called Plaintiff into a hallway, informed her of the write-up, and told her that she was to immediately roll up and be placed in segregation.  *Id.* at 24-25.

1    On January 21, 2020, Plaintiff went to a due process hearing conducted by

2    Defendants Oliver, Holston, and Peterson.  *Id.* at 25.  No one else participated in this

3    hearing.  *Id.*  Defendant Oliver acknowledged an abundance of unreliable urine samples

4    and resulting MJ44 charges and denied a request for a retest.  *Id.*  Oliver stated his hands

5    were tied and that Plaintiff had little chance of "beating this."  *Id.*  Oliver asked questions

6    about Plaintiff's medical state.  *Id.*  Plaintiff asserted an error in the procedure because

7    the regulations reference "medical reasons" rather than "medications."  *Id.*  The hearing

8    ended abruptly.  *Id.*  Plaintiff was referred to a disciplinary hearing and transferred to

9    another segregation unit.  *Id.*

10    On January 25, 2020, Defendant Medeiros read the disciplinary charge to Plaintiff.

11    *Id.*  Plaintiff pleaded not guilty and requested but was denied a retest.  *Id.* at 25-26.  On

12    January 29, 2020, Plaintiff submitted a kite to Medeiros with her list of witnesses.  *Id.* at

13    26.  On February 29, 2020, Defendant Rivera removed Plaintiff from her cell and escorted

14    her to a hearing before Rivera and Sanchez.  *Id.*  Sanchez was upset that Plaintiff had

15    requested witnesses and had documentation to refute the write-up.  *Id.*  Sanchez stated

16    that he did not get notice of Plaintiff's witnesses.  *Id.*  Plaintiff was ordered to return to her

17    cell and provide copies of the kite, the evidence intended to be used at the hearing, and

18    questions of prospective witnesses.  *Id.*  Plaintiff requested a retest and was denied.  *Id.*

19    On March 12, 2020, Plaintiff had a disciplinary hearing before Sanchez and Trujillo.

20    *Id.*  Witnesses were questioned but apart from the hearing and Plaintiff.  *Id.*  No

21    documentation that Plaintiff had submitted at an earlier hearing was admitted into the

22    record.  *Id.*  Sanchez phoned Defendant Flores, in medical, during the hearing.  *Id.*

23    Plaintiff was not allowed to question Flores.  *Id.*  Plaintiff requested a retest but was

24    denied.  *Id.*   Plaintiff was found guilty of an MJ44 violation.  *Id.*

25

Plaintiff appealed Sanchez's disciplinary decision. *Id.* at 27. Garcia-Najera required the grievance to be resubmitted on the asserted, but incorrect, basis that a document was missing. *Id.* On resubmission, the appeal was denied. *Id.* Plaintiff filed a second level appeal, which was assigned to Wickham. *Id.* He denied the appeal and did not provide for a retest of the urine sample or grant any relief. *Id.* at 27-28.

NDOC charged Plaintiff restitution in an amount that is almost two and one-half the rate of the co-pay charged for lab work in the facility medical department. *Id.*

Plaintiff's cell was searched on August 14, 2019. *Id.* at 30. A book and Plaintiff's PTSD journal (both authorized by Dr. Malory) was taken by Defendants Haralson and Moran into the bubble office and perused. *Id.* Baumgras removed the items to shift command. *Id.* The PTSD book ended upon on Neven's desk. *Id.*

Defendant Peterson made remarks and inquiries about Plaintiff's emotional health. *Id.* Plaintiff refused to share confidential mental health information. *Id.* Peterson created and shared a factually untrue communication with staff. *Id.*

Neven and Garcia-Jajera asked Dr. Malory to justify why she was seeing Plaintiff. *Id.* at 31.

On at least four occasions between January 2020 and July 2020, Defendants Neven, Flores, Oliver, Sanchez, and Nash, made inquiries with medical personnel and shared or interpreted the information regarding Plaintiff's disciplinary charge for a diluted urine sample. *Id.*

Garcia-Najera acted as a grievance coordinator for the associate warden or acting warden. *Id.* at 32. Peterson acted as a caseworker or PREA designee or acting grievance coordinator or acting associate warden of programs. *Id.* Garcia-Najera and Peterson routinely do not accept grievances causing multiple resubmits. *Id.* at 33.

9

Defendants Howell and Garcia-Najera issued a directive on July 30, 2020 to staff that inmates would no longer be allowed to purchase copies of inmate-related memos, or NDOC indices for administrative regulation, operational procedures, medical directives, or minutes of meetings between Howell (or his designee) and the inmate advisory committee. *Id.* at 34.

Plaintiff is required to attach documentation to grievances. *Id.* Plaintiff must know of and locate a memo but not all memos are posted in all units. *Id.* Plaintiff must then re-write or transcribe the memo to include it in a grievance. *Id.*

When Plaintiff was placed into segregation from January 18, through January 22, 2020, she did not have direct law library or phone access. *Id.* at 36. Plaintiff was transferred to another segregation unit from January 22, through April 8, 2020. *Id.* Plaintiff was moved to the "jungle" on April 9, 2020. *Id.*

Plaintiff believes the visits that Ruiz, the law library supervisor, made to her while she was housed in the segregation units were shadowed and monitored by correctional officers. *Id.* at 37. They reported the interactions and discussions to Garcia-Najera. *Id.*

Plaintiff did not know or receive timely information from either the courts or her advocate of an action taken in her criminal appeal by the Nevada Supreme Court. *Id.*

Garcia-Najera installed less-qualified or unqualified workers in the law library. *Id.*

Sanchez and Trujillo imposed phone restrictions precluding Plaintiff from her twice-weekly free phone calls afforded to inmates under an NDOC-wide Covid-19 protocol. *Id.* The Covid-19 protocol also cancelled attorney visits. *Id.* at 38.

In April 2020, the phone restriction made it impossible for Plaintiff to access a newly appointed attorney. *Id.* The appointed appellate counsel obtained a court-order

mandating that prison officials provide twice-per-month phone calls in conference with attorney. *Id.* Plaintiff missed two scheduled calls in August 2020. *Id.*

Plaintiff's medical records with NDOC and FMWCC document chronic and serious medical needs including hypertension, PTSD, asthma, thyroid, and vision. *Id.* at 39. Plaintiff suffered delays in obtaining an eye exam between October 2018 and July 2019. *Id.* At an exam, Defendant Dr. Leaks expressed concern that there was significant damage and that it looked like Plaintiff had another person's eyes since the last visit. *Id.* During the exam, Dr. Leaks commented, "Maybe you were born this way." *Id.* at 40. Plaintiff described an increase in headaches, blurred vision, dizziness, and pressure behind the right eye. *Id.* Dr. Leaks ordered a follow-up exam in 60 days. *Id.* The follow-up appointment was delayed. *Id.* Plaintiff began grieving the issue on February 6, 2020. *Id.*

On January 18, 2020, Plaintiff did not have her medication for approximately three weeks. *Id.* On at least two occasions [shortly before submitting her complaint], Plaintiff has been without medications. *Id.*

Eye examinations are scheduled only every two years. *Id.*

Based on these allegations, Plaintiff asserts: Count 1, claims for violations of First Amendment right to free speech and retaliation,[3] and violations of the Fourteenth Amendment due process and equal protection clauses;[4] Count 2, violations of the

---

[3] Plaintiff asserts the retaliation claim as a violation of the Eighth Amendment. However, given Plaintiff's broad assertions she was engaged in protected conduct, the Court will construe the claim as brought pursuant to the First Amendment.

[4] Plaintiff recites each of her Fourteenth Amendment claims as also brought pursuant to the Fifth Amendment. However, a due process claim against state prison officials is grounded in the Fourteenth Amendment rather than the Fifth Amendment. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the

Fourteenth Amendment due process clause, and violations of the Eighth Amendment cruel and unusual punishments clause; Count 3, right to privacy and protections under the Health Insurance Portability Accountability Act (HIPAA); Count 4, violations of the First and Fourteenth Amendments regarding the prison grievance and appeals process; Count 5, violation of the Fourteenth Amendment due process right to access the courts;[5] and Count 6, deliberate indifference to serious medical needs in violation of the Eighth Amendment.

The Court liberally construes the Complaint as bringing claims for retaliation in violation of the First Amendment, for cruel and unusual punishment and deliberate indifference to serious medical needs in violation of the Eighth Amendment, for due process and medical privacy guaranteed by the Fourteenth Amendment, and denial of access to the prison's grievance process and the courts. The Court will address each of these issues as well as Plaintiff's HIPAA claim.

**A. Improper Pleading – Federal Rules of Civil Procedure 8, 10, 18, 20**

Plaintiff's 47-page complaint fails to comply with the pleading requirements of the Federal Rules of Civil Procedure (FRCP). The Court advises Plaintiff of the following requirements under the FRCP to facilitate the proper pleading of an amended complaint if

Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.") Plaintiff has not alleged conduct against any federal actor.

[5] Plaintiff recites that this claim is also brought pursuant to the First Amendment. In screening prisoner complaints, the Court follows the instruction of the Supreme Court that "[t]he right of access to the courts . . . is founded in the Due Process Clause," *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974), and considers such claims under the Fourteenth Amendment.

she elects to file one.  Plaintiff is further advised that the failure to comply with these rules when drafting and filing an amended complaint may result in this action being dismissed.

### i. Federal Rules of Civil Procedure 8 and 10

"Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*.  Plaintiff is cautioned that the function of a complaint is to notify Defendants of their acts for which she seeks to hold them liable.  Her extensive conclusions and speculations, comprising most of her 47-page complaint, are neither simple nor direct statements of Defendant's specific acts supporting her claims.  Plaintiff need not list all acts every defendant's act by every defendant.  But, she must allege sufficient facts to support her conclusory allegations.

### ii. Federal Rules of Civil Procedure 18 and 20

A basic lawsuit is a single claim against a single defendant.  FRCP 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. FRCP 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action."  However, unrelated claims that involve different defendants must be brought in separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner").  This rule

13

is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that inmates pay the required filing fees for their lawsuits and prevent inmates from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

I advise Plaintiff that each claim that is raised in her amended complaint must be permitted by either Rule 18 or Rule 20. Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to her action that are against the same defendant under FRCP 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as her original claim. Fed. R. Civ. P. 20(a)(2). Plaintiff's conclusory assertion that her claims arise from the same transaction, occurrence, or series of transactions (ECF No. 1-1 at 13) does not cure this defect.

**B. Count 1: Retaliation in Violation of the First Amendment**

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69.

Plaintiff fails to state a cognizable First Amendment claim for retaliation. The fundamental defect to her claim is her failure to allege facts raising a permissible inference that she engaged in an act that is protected by the First Amendment. Plaintiff's repeated, and unsupported, conclusion that she engaged in protected conduct does not

14

cure this defect.  Plaintiff's allegation that she worked in the prison's law library does not cure this defect as her employment is not protected by the First Amendment.  While the Court assumes that Plaintiff might have engaged in protected conduct while employed in the prison law library, the mere fact of her employment does not meet Plaintiff's burden. She must allege facts showing the protected conduct that she alleges caused Defendant's adverse actions against her.  As a result of this defect, Plaintiff has failed to allege facts permitting the inference that any adverse act by a state actor (to the extent she has properly alleged such adverse actions) was *because* Plaintiff engaged in protected conduct.

The Court notes, as one example of this defect, that Plaintiff alleges that Oliver, Holston and Peterson conducted a due process hearing which resulted in her being referred to a disciplinary hearing.  This allegation raises a plausible inference that Oliver, Holston, and Peterson took an adverse action against Plaintiff.  However, because Plaintiff has not alleged an act of protected conduct, she has failed to allege any facts suggesting these Defendants were even aware of Plaintiff's act of protected conduct. Plaintiff's burden, however, is to allege facts raising a plausible inference that these Defendants knew of Plaintiff's protected conduct and acted against Plaintiff *because* of that protected conduct.  She has not met this burden as to any named Defendant in her complaint.  The Court will dismiss Count 1 without prejudice with leave to amend.

**C. Count 2: Low Creatine in Plaintiff's Urine Sample.**

The Court liberally construes Count 2 as alleging claims arising during the disciplinary process resulting from the lab analysis that reported Plaintiff's urine sample had a low level of creatine.

### i. Fourteenth Amendment – Due Process

Plaintiff has not stated a cognizable Fourteenth Amendment due process claim from the disciplinary process arising from the lab's determination that her urine sample had a low creatine level. To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id*. at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An

16

inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Jail officials "must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). Despite this, an inmate has no right to cross-examine or confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). However, this standard does not apply when considering a due process claim brought against a prison guard for falsely accusing an inmate of a violation. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

Plaintiff cannot maintain a due process claim to the extent that she may be alleging that her employment in the prison's law library was terminated because her urine sample had a low creatine level. Plaintiff does not have a protected interest in her prison employment. *See Collins v. Palczewski*, 841 F.Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the United States Constitution, Nevada statutory law, nor the state's prison administrative regulations create a protected liberty or property interest in prison employment).

Plaintiff's only allegation plausibly suggesting an infringement of a protected liberty interest was her placement in disciplinary segregation along with other sanctions. Plaintiff alleges that Sanchez and Trujillo conducted the March 12, 2020 disciplinary hearing that resulted in finding her guilty of the major violation and that imposed sanctions

17

for that violation.  Plaintiff has alleged only one fact raising a plausible inference that Sanchez and Trujillo violated her due process right during the disciplinary hearing: she alleges she requested but was denied a retest of her urine sample.  Whether these prison officials may be able to show they had a legitimate penological reason for limiting Plaintiff's efforts to defend herself is not a question to be resolved in screening the complaint.

For similar reasons, Plaintiff has alleged only one fact raising a plausible inference that H. Wickham violated her due process rights after the disciplinary hearing.  Plaintiff has sufficiently alleged that she grieved the disciplinary action to Wickham on the basis that she was denied an opportunity to defend herself by having the urine sample retested, but that Wickham denied the appeal. The Court will allow Plaintiff's due process claim to proceed against Sanchez, Trujillo and Wickham arising from the denial of Plaintiff's request for a retest of her urine sample.

Plaintiff has not, however, alleged facts permitting a plausible inference that any other defendant violated a due process right afforded to inmates facing disciplinary charges.  While prisoners have a due process right to not be falsely charged with a disciplinary violation, Plaintiff has not alleged any facts raising a plausible inference that she was falsely charged.  Rather, she has alleged facts conceding that the charge was based on some evidence.  She has alleged that the lab test reported a low creatine level in Plaintiff's urine sample.  Plaintiff's asserted disagreement whether the result was reliable is irrelevant to her concession that a lab analysis reported that her urine sample had a low creatine level.  Plaintiff's allegations that, prior to the disciplinary hearing, several Defendants denied her request for a retest also fail to state a due process claim. Plaintiff did not have a liberty interest in avoiding, or prematurely terminating, an

appropriate disciplinary process.  Plaintiff's remaining allegations of fact concern acts

ensuring that Plaintiff's due process rights were met, including notifying her of the charges

against her.  The Court will dismiss Plaintiff's Fourteenth Amendment due process claim

against all other Defendants without prejudice with leave to amend.

### ii.  Eighth Amendment – Cruel and Unusual Punishment

Plaintiff also claims that the conduct alleged in Count 2 violates the Eighth

Amendment cruel and unusual punishment clause.  The cruel and unusual punishment

clause "prohibits not only barbaric punishments, but also sentences that are

disproportionate to the crime committed."  *Solem v. Helm,* 463 U.S. 277, 284 (1983).

Gross disproportionality is "applicable only in the 'exceedingly rare' and 'extreme' case."

*Lockyer v. Andrade,* 538 U.S. 63, 72-73 (2003).  Plaintiff has not alleged she was subject

to any sanctions that could be considered grossly disproportionate to a major disciplinary

violation.  Rather, the sanctions alleged by Plaintiff' in her complaint and indicated in the

exhibits attached to her complaint is that Sanchez imposed a 45-day canteen sanction,

which was extended to 52 days, that she was subject to a 45-day prohibition on using the

phone, that she was placed in segregation, and then housed in a 12-person cell in the

'jungle' after segregation  The Court is firmly convinced that, given Plaintiff's allegations of

the sanctions that were imposed, she cannot amend her complaint to allege additional,

but previously undisclosed, sanctions that establish her punishment for the MJ44 violation

was grossly disproportionate.  The Court will dismiss this Plaintiff's Eighth Amendment

cruel and unusual punishment claim with prejudice as amendment would be futile.

### D.  Count 3 – Medical Information

#### i.  Health Insurance Portability and Accountability Act (HIPAA)

"HIPAA itself does not provide for a private right of action."  *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007).  Accordingly, the Court dismisses Plaintiff's HIPAA claim with prejudice as amendment would be futile.

#### ii.  Fourteenth Amendment: Medical Privacy

The Due Process Clause of the Fourteenth Amendment protects individuals against the disclosure of personal matters, *Whalen v. Roe*, 429 U.S. 589, 598-99, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), which "clearly encompasses medical information and its confidentiality," *Norman-Bloodsaw v. Lawrence Berkeley Lab*., 135 F.3d 1260, 1269 (9th Cir.1998) (citations omitted).  "[T]he right to informational privacy applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public." *Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783, 789-90 (9th Cir.2002) (citations omitted).

However, the privacy protection afforded medical information is not absolute and may be infringed upon a showing of proper governmental interest.  *Lawall*, 307 F.3d at 790 (citations omitted).  The governmental interest in disclosure must advance a legitimate state interest and the government's action must be narrowly tailored to meet the legitimate interest.  *Roe v. Sherry*, 91 F.3d 1270, 1274 (9th Cir.1996) (quotations and citation omitted).

Plaintiff alleges several different, and largely unrelated, incidents in which she claims her medical privacy was violated.

### a. August 14, 2019, Incident.

Plaintiff alleges that on August 14, 2019, Haralson and Moran removed and perused a book and a PTSD journal (authorized by Dr. Mabry, a psychologist) from her cell, that Baumgras moved the items to shift command, and that the journal ended up on Neven's desk.  The claim is mis-joined to this action and must be dismissed as such without prejudice.  Plaintiff's allegations establish that Count 2 arises from Plaintiff's low creatine urine sample that she provided in January 2020.  Liberally construed, Count 1 appears to be a claim that Defendants' conduct related to that disciplinary action was retaliatory.  Plaintiff's allegations that Haralson and Moran, who are NOT named in either Count 1 or 2, removed and perused a book and journal from Plaintiff's cell on August 14, 2019, are unrelated to the events in early January 2020 underlying Counts 1 and 2.  The Court will dismiss this claim without prejudice but without leave to amend because it is not properly joined to this action.

### b. Peterson Inquiries

Plaintiff broadly and vaguely alleges Peterson made remarks and inquiries (apparently to her) about Plaintiff's emotional health. She further alleges she refused to provide him with confidential information.  Peterson's act of asking Plaintiff about her mental health does not constitute a violation of her Fourteenth Amendment right to medical privacy.  The Court will dismiss this claim with prejudice as amendment would be futile.

### c. Neven and Garcia-Najere Interaction with Dr. Mabry

Plaintiff alleges that, at some unknown time, Neven and Garcia-Najere asked Dr. Mabry to "justify" why she was seeing Plaintiff.  Plaintiff offers no further allegations of fact regarding this incident that raises a plausible inference that either Defendant violated

Plaintiff's right to have medical information remain private.  The Court will dismiss Plaintiff's Fourteenth Amendment claim arising from this incident without prejudice with leave to amend.

### d.  Disclosures related to Plaintiff's MJ44 violation.

Plaintiff alleges that Neven, Flores, Oliver, Sanchez, Nash, and Wickham violated her medical privacy on four occasions between January 20, and July 31, 2020 related to her low creatine urine sample.  The broad allegation against Neven, Nash, and Wickham violates Rule 8 as Plaintiff has not alleged any fact as against these Defendants that arguably concerns her medically private information.

Plaintiff has alleged that Velesco, Currier, and Sanchez contacted FMWCC medical staff, and that Flores responded to Sanchez's inquiry, to determine whether Plaintiff was taking medications that could contribute to low creatine in Plaintiff's urine sample.  Plaintiff has alleged Oliver inquired regarding Plaintiff's medications at the due process hearing for a similar reason.  Plaintiff has alleged these Defendants disclosed or obtained medically private information.  Plaintiff has also alleged facts, however, showing the government's legitimate penological interest in the medically private information that was disclosed.  Plaintiff's urine sample had a low creatine level that would, if not excused for medical reasons, expose Plaintiff to a disciplinary sanction.  Plaintiff has not alleged facts indicating that the medical information that was disclosed exceeded this legitimate purpose.  Plaintiff's implicit argument that the disclosed information exceeded prison regulations is not relevant to whether the disclosed information was in violation of the Fourteenth Amendment.  The Court will dismiss Plaintiff's medical privacy without prejudice with leave to amend to the extent it concerns the disclosure of medical information in relation to the low creatine level in her urine sample.

### e. Supervisory Defendants

Plaintiff states a broad, unsupported allegation against supervisory Defendants Daniels, Dzurenda, H. Wickham, T. Wickham, and Minev that they should have known of the violations of Plaintiff's medical privacy rights.  The allegation is deficient under Rule 8, as Plaintiff does not allege facts permitting the Court to find that these Defendants will be placed on notice of the conduct for which Plaintiff seeks to hold them liable.  The Court will dismiss Plaintiff's medical privacy claim against these supervisory Defendants without prejudice with leave to amend.

### E. Counts 4 and 5: Denial of Access to Courts and Grievance Process

Prisoners have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury," a jurisdictional requirement that flows from the standing doctrine and may not be waived.  *Id*. at 349.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id*. at 348.  The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  *Id*. at 353.

This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356.  It is this "capability, rather

23

than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id*. at 356-57.

Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id*. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id*. at 353 n.3, 354-55.

"The right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). "[T]he object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Christopher v. Harbury*, 536 U.S. 403, 413, (2002).

Plaintiff fails to state a cognizable claim either that she was denied access to the Courts or that she was denied access to FMWCC's grievance process. The only allegation in Plaintiff's complaint suggesting she might have suffered an actual injury is her allegation that she did not receive information regarding her criminal appeal that left Plaintiff without an attorney. Plaintiff does not, however, allege sufficient facts to permit a plausible inference that this event resulted in an "actual injury" in her criminal appeal. Rather, Plaintiff alleges that in April 2020, her newly appointed attorney obtained a court order requiring the prison to allow Plaintiff to have phone calls with the attorney. Similarly, Plaintiff alleges she missed two phone calls in August 2020. Plaintiff fails, however, to allege any facts raising a plausible inference that the missed phones calls resulted in actual prejudice to her criminal appeal. Plaintiff has not alleged any other

24

nonfrivolous legal claim underlying her request for relief for denial of access to the prison's grievance procedures or her access to the courts. The Court will dismiss both the access to the courts and access to the prison grievance procedure claims without prejudice with leave to amend.

### F. Count 6: Eighth Amendment Deliberate Indifference to Serious Medical Need

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury.

*See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

### i. Eye Issues

The Court must dismiss Plaintiff's serious medical needs claim to the extent it concerns delayed or canceled appointments for an eye exam with Defendant Dr. Leaks as improperly joined to this complaint. As previously noted, the fundamental claims to Plaintiff's complaint concern the disciplinary action against her arising from the low creatine levels in the urine sample that she provided in January 2020. Plaintiff's claims concerning the medical needs of her eyes predate this incident by several years and allege delays in appointments and Plaintiff's complaints about pain in and behind her right eye. Further, her allegations name only a single Defendant, Dr. Leaks, who is not named in any other claim in Plaintiff's complaint. The Court will dismiss Plaintiff's claim of deliberate indifference to serious medical needs concerning her eyes without prejudice but without leave to amend as improperly joined to this action.

### ii. Other Medical Issues

Plaintiff fails to state a cognizable deliberate indifference to serious medical needs claim arising from any other medical issue. Plaintiff alleges that, when she was first transferred to segregation, she went without medication for about three weeks for a serious medical need. Plaintiff fails to allege any facts that this three-week period without medication caused her a further injury. Her general allegation that her condition was exacerbated does not cure this defect. Finally, Plaintiff fails to identify any Defendant who, knowing of Plaintiff's serious medical need, purposefully acted or failed to act to cause Plaintiff to not receive her medication. Similarly, Plaintiff's allegation that she has

26

been without medications to treat serious medical needs in the weeks before filing her complaint fails for the same reasons. She has not alleged who, knowing of her medical needs, caused her to not receive her medications. She has also failed to allege that the denial caused a further significant injury. The Court will dismiss Plaintiff's deliberate indifference to serious medical needs claim without prejudice with leave to amend. The Court advises Plaintiff, however, that this leave to amend is granted only to the extent that Plaintiff is able to allege such claims in compliance with the rules regarding proper joinder of claims.

**III. Leave to Amend**

Plaintiff is granted leave to file an amended complaint to cure the deficiencies of the complaint. If Plaintiff chooses to file an amended complaint, she is advised that an amended complaint entirely replaces the original complaint and, thus, the amended complaint must be complete. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). To be complete, an amended complaint must contain all claims, defendants, and factual allegations that a plaintiff wishes to pursue in his lawsuit. Moreover, an inmate should file the amended complaint on this Court's approved prisoner civil rights form, and it must be entitled "First Amended Complaint."

1    If Plaintiff chooses to file an amended complaint curing the deficiencies, as outlined

2    in this order, Plaintiff must file the amended complaint within 30 days from the date of

3    entry of this order.

4    If Plaintiff chooses to file an amended complaint, the Court will screen the

5    amended complaint in a separate screening order.  The screening process will take

6    several months.  If Plaintiff does not file an amended complaint curing the deficiencies

7    outlined in this order, this action will immediately proceed exclusively against Defendants

8    Sanchez, Trujillo, and H. Wickham on Plaintiff's Fourteenth Amendment due process

9    claim arising from the denial of her request, in the disciplinary hearing, for a retest of her

10   urine sample.

11   **IV. Motion for Appointment of Counsel**

12   Plaintiff has filed a motion for appointment of counsel.  ECF No. 1-4.  A litigant

13   does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights

14   claims.  *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).  Pursuant to 28

15   U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable

16   to afford counsel."  However, the court will appoint counsel for indigent civil litigants only

17   in "exceptional circumstances."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§

18   1983 action).  "When determining whether 'exceptional circumstances' exist, a court must

19   consider 'the likelihood of success on the merits as well as the ability of the petitioner to

20   articulate his claims *pro se* in light of the complexity of the legal issues involved."  *Id*.

21   "Neither of these considerations is dispositive and instead must be viewed together."  *Id*.

22   In the instant case, the Court does not find exceptional circumstances that warrant the

23   appointment of counsel.  The Court denies the motion for appointment of counsel without

24   prejudice.

25   28

## V. CONCLUSION

Therefore,

THE COURT **ORDERS** that a decision on the application to proceed *in forma pauperis* (ECF No. 5) is DENIED as moot.

THE COURT FURTHER **ORDERS** that Plaintiff's Motion for Appointment of Counsel (ECF No. 1-4) is DENIED without prejudice.

THE COURT FURTHER **ORDERS** that the Clerk of the Court shall file the complaint (ECF 1-1, along with attachments ECF No. 1-2 and 1-3).

THE COURT FURTHER **ORDERS** that:

- Plaintiff's First Amendment – Retaliation claim in Count 1 is DISMISSED without prejudice with leave to amend;

- Plaintiff's Fourteenth Amendment – Due Process claim in Count 2 may proceed as against Defendants Sanchez, Trujillo, and H. Wickham and is DISMISSED as against all other Defendants without prejudice with leave to amend.

- Plaintiff's Eighth Amendment - Cruel and Unusual Punishment claim in Count 2 is DISMISSED with prejudice as amendment would be futile;

- Plaintiff's HIPAA in Count 3 is DISMISSED with prejudice as amendment would be futile;

- Plaintiff's Fourteenth Amendment – Medical Privacy claim in Count 3 arising from the August 14, 2019 incident is DISMISSED without prejudice but without leave to amend as improperly joined;

- Plaintiff's Fourteenth Amendment – Medical Privacy claim arising from Peterson's inquiries in Count 3 is DISMISSED with prejudice as amendment would be futile;

- Plaintiff's Fourteenth Amendment -- Medical Privacy claims arising from the interactions with Dr. Mabry, and the disclosure of Medical Information related to Plaintiff's low creatine levels in Count 3 are DISMISSED without prejudice with leave to amend;

- Plaintiff's Fourteenth Amendment – Denial of Access to Courts and Denial to Grievance Procedure claims in Counts 4 and 5 are DISMISSED without prejudice with leave to amend;

- Plaintiff's Eighth Amendment – Deliberate Indifference to Serious Medical Needs claim in Count 6 concerning issues with her eyes is DISMISSED without prejudice but without leave to amend as improperly joined;

- Plaintiff's remaining Eighth Amendment – Deliberate Indifference to Serious Medical Need claims in Count 6 are DISMISSED without prejudice with leave to amend.

THE COURT FURTHER **ORDERS** that the Clerk of the Court send Plaintiff the approved form for filing a § 1983 complaint, instructions for the same, and a copy of her original complaint (ECF No. 1-1). If Plaintiff chooses to file an amended complaint, she should use the approved form and she will write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

THE COURT FURTHER **ORDERS** that, if Plaintiff chooses to file an amended complaint curing the deficiencies of his complaint, as outlined in this order, Plaintiff must file the amended complaint within 30 days from the date of entry of this order.

THE COURT FURTHER **ORDERS** that, if Plaintiff chooses to file an amended complaint, the Court will screen the amended complaint in a separate screening order. The screening process will take several months.

THE COURT FURTHER **ORDERS** that, if Plaintiff does not file an amended complaint curing the deficiencies outlined in this order, this action will be immediately proceed exclusively against Defendants Sanchez, Trujillo, and H. Wickham on Plaintiff's Fourteenth Amendment due process claim arising from the denial of her request, in the disciplinary hearing, for a retest of her urine sample.

DATED THIS __7__ of July 2021.

_____
Gloria M. Navarro
United States District Judge

31