1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3    * * *

4    ROSEMARY VANDECAR,                          Case No. 2:20-cv-02150-ART-BNW

5                              Plaintiff,        ORDER GRANTING IN PART
                                                 DEFENDANTS' MOTION TO DISMISS
6         v.                                     (ECF NO. 94)

     CHARLES DANIELS, et al.,
7
                             Defendants.
8

9          Plaintiff Rosemary Vandecar, incarcerated in Florence McClure Women's

10   Correctional Center ("FMWCC"), sues the Nevada Department of Corrections

11   ("NDOC") and several current and former employees of NDOC for Constitutional

12   violations via 42 U.S.C. § 1983 ("§ 1983"), discrimination under the Americans

13   with Disabilities Act ("ADA"), and violations of the Nevada Constitution and state

14   laws. (ECF No. 94.) Defendants moved to dismiss based on sovereign immunity

15   and improper amendment of the complaint to add Defendant Dr. Minev and ADA

16   Title II claims. (ECF No. 104.) Plaintiff responded, and Defendants replied. (ECF

17   Nos. 106, 108.)  For the reasons stated, Defendants' motion to dismiss is granted

18   in part and denied in part.

19   I.    **FACTUAL HISTORY**

20         The following alleged facts, unless otherwise indicated, are from Plaintiff's

21   Fourth Amended Complaint ("FAC"), which asserts claims related to alleged

22   retaliation and denial of medical care for cataracts and eye problems.

23         Plaintiff Rosemary Vandecar has been incarcerated at the Florence

24   McClure Women's Correctional Center since at least 2013.

25         **Retaliation Related Claims**

26         In May 2013, Plaintiff began working at the prison's law library. Plaintiff

27   was an exemplary employee.

28

Plaintiff alleges that Defendants retaliated against her for refusing to lie to federal investigators. Between February and July 2019, Defendant Neven and Defendant Garcia Najera allegedly threatened Plaintiff and told her to lie to federal Prison Rape Elimination Act ("PREA") investigators about an investigation taking place at FMWCC. Plaintiff refused to do so. In August 2019, Defendants Neven, Oliver, Garcia Najera, Baumgras, Holston, and Sanchez searched Plaintiff's cell, took her personal belongings, including a prescription Post-Traumatic Stress Disorder ("PTSD") journal, and exhibited her personal belongings in the shift command room and on Defendant Neven's desk. Defendants' raid on Plaintiff's property allegedly stemmed from Plaintiff's refusal to lie to the PREA investigators.

Plaintiff also alleges that Defendants threatened her for refusing to identify inmates who had made complaints through the FMWCC law library. Around August 2019, Defendants Garcia Najera, Wickham, Oliver, Neven, Holston and non-Defendant social worker Peterson locked Plaintiff in a room to solicit information about inmate complaints. Defendant Garcia Najera told Plaintiff that she "knows too much," and Defendant Oliver allegedly told Plaintiff, "I'm going to be the first person to kick your ass." Defendants then instructed Plaintiff to say that their meeting had been about administrative regulations. Plaintiff also alleges that Defendant Garcia Najera placed an informant in the law library to monitor her, and that around January 2020, Defendants Neven and Garcia Najera questioned nurses and psychologists about Plaintiff's medical and psychological treatments.

Many of Plaintiff's claims follow from an allegedly tampered-with urine sample. In January 2020, Defendant Velasco ordered Plaintiff to take a urine test for unauthorized substances. Days later, Redwood Toxicology Lab issued an adverse report showing low creatinine levels in Plaintiff's sample. On January 18, 2020, Defendant Velasco issued a Notice of Charges ("MJ44," a major

violation disciplinary offense for testing positive for an unauthorized substance or submitting an adulterated, diluted, or insufficient sample) that Plaintiff's urine was diluted. Prison officials moved Plaintiff to administrative segregation because of this test. While Plaintiff was in segregation, prison officials removed Plaintiff's bible, PTSD journal, and legal documents from her cell.

According to Plaintiff, Defendants manufactured a negative result for her urine test then refused requests to test again. At a hearing on January 21, 2020, Defendants Oliver, Holston, and case-worker Peterson denied Plaintiff a second opportunity to test, and Defendant Oliver told Plaintiff something like, "there had been an abundance of unreliable urine analysis results that nevertheless resulted in MJ44 charges." Plaintiff remained in administrative segregation until early April 2020.

While in segregation awaiting a resolution of her charges, Plaintiff sought redress. She filed several grievances and attended hearings before Defendants Rivera and Sanchez in February and before Defendants Sanchez and Trujillo in March. Plaintiff alleges that she was not allowed to submit evidence to the record, question witnesses, or request a second urine sample at these hearings. At the March hearing, the hearing officer found Plaintiff guilty of the MJ44 violation, which led to Plaintiff losing contact with the lawyer handling her criminal appeal. Plaintiff alleges that several Defendants conspired to impede Plaintiff's criminal appeal and block her from communicating with her lawyer.

Following Plaintiff's MJ44 conviction, prison officials removed Plaintiff from her job at the law library and placed her in a residential unit known as "the jungle" because of its reputation for violence. Plaintiff continued to submit grievances, and in June 2020, Defendant Wickham allegedly told Plaintiff that her grievances would not stand up in court and that she would never get her law library job back if she tried to go to court.

Officer Defendants allegedly exacted further abuse and carried out policy changes to continue retaliating against Plaintiff in the following months. In July 2020, Plaintiff experienced another search of her cell and endured invasive questioning from Defendants Rojas and Holston. She alleges that on July 30, 2020, Defendants Howell and Garcia Najera issued directives preventing inmates from purchasing copies of inmate-related memos, NDOC indices for administrative regulations, operational procedures, medical directives, or meeting minutes of inmate advisory committee meetings. Plaintiff alleges that this policy change was specifically aimed at her because she regularly used these materials. Days later, Defendants Howell and Garcia Najera allegedly moved inmates whom Plaintiff was helping to another unit so that Plaintiff could no longer help them. Weeks later, in September, Defendant Garcia allegedly verbally insulted Plaintiff in front of other inmates.

The alleged retaliation continued. In March 2021, a prison official identified Plaintiff as a gang member in her file and raised her yard points to seventeen from four. An official identified the change as a clerical error and reduced Plaintiff's points to seven in April. In May 2021, Plaintiff alleges that prison officials assigned Plaintiff to an upstairs room with a dangerous roommate despite medical orders for a lower bunk and a lower tier. From July to August 2021, officials denied Plaintiff a CD-ROM of her legal mail. In December 2021, Plaintiff suffered shingles arising out of stress, anxiety, and PTSD, allegedly from Defendants' conduct. In January 2022, prison officials placed Defendant in a suicide cell and the infirmary. Plaintiff mentions she suffered "bruising to her body including ribs, arms, and legs."

**Plaintiff's Cataracts and Eye Problems**

Plaintiff alleges deliberate indifference to serious medical need against FMWCC's contract medical provider Dr. Leaks for subjecting her "to prolonged and unnecessary delays in obtaining an eye exam" between October 2018 and

July 2019. (ECF No. 7.[1]) At Plaintiff's eye exam in July 2019, Dr. Leaks "expressed concern that there was 'significant damage,'" telling Plaintiff "'it's like you have another person's eyes since I last saw you.'" (*Id.*) Plaintiff told Dr. Leaks that she was experiencing headaches, blurred vision, dizziness, and pressure behind her right eye "as if it was being pushed out of its socket." (*Id.*) Dr. Leaks ordered a follow-up with the Plaintiff within sixty days, which was delayed for several months. (*See id.*) Plaintiff filed grievances requesting "treatment/medications necessary concerning the ongoing headaches, blurred vision[,] and pressure in my right eye." (*Id.*) In June 2020, Defendant Minev responded to Plaintiff's appeals of her these grievances, telling Plaintiff that his records showed that she had received new prescription glasses and that she should kite medical if she experiences other medical issues.

In January 2023, a medical professional affiliated with NDOC, Dr. Abrams, told Plaintiff that she needs eye surgery and that she has cataracts in both eyes. Plaintiff alleges that this surgery has been delayed because of NDOC's "one-eye" policy under which NDOC refused inmates with monocular blindness corrective surgery. As of the filing of the FAC, Plaintiff had not received treatment for her cataracts or other eye issues.

## II.    STANDARD OF REVIEW

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See*

---

[1] Although Plaintiff's current complaint is the operative complaint, both parties mention this original complaint in their briefing on the latest motion to dismiss. (*See* ECF Nos. 106, 108.)

1    *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). While the standard

2    under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must

3    provide more than mere labels, conclusions, or a formulaic recitation of a claim's

4    elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal

5    conclusions can provide the framework of a complaint, they must be supported

6    with factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

7    **III.   DISCUSSION**

8            Defendants move to dismiss Plaintiff's FAC arguing that (1) NDOC is

9    immune from suit based on Eleventh Amendment sovereign immunity; (2)

10   Plaintiff's state law claims are barred under the Eleventh Amendment; (2) none

11   of the named Defendants may be sued for damages because none have been

12   sued in their personal capacity; and (4) Plaintiff's amendments adding ADA

13   claims and a party, Dr. Michael Minev, are time-barred.[2]

14           **A.    Dismissal Under the Eleventh Amendment**

15           Defendants argue that Plaintiff's claims are barred by Eleventh

16   Amendment sovereign immunity. Defendants argue that sovereign immunity

17   bars naming NDOC as a party, suits against officers in their official capacities,

18   and Plaintiff's state law claims. The Court holds that many of Plaintiff's claims

19   are barred by sovereign immunity, but her claims under Title II of the ADA

20   (Claims 6 and 7), her Nevada Constitutional claims (Claim 13), and her § 1983

21   claims against officers in their personal capacities (Claims 1-5, 8) may proceed.

22           "The Eleventh Amendment prohibits federal courts from hearing suits

23   brought against an unconsenting state," including "suits naming state agencies

24   and departments as defendants, and [it] applies whether the relief sought is legal

25

---

26   [2] Although Defendants argue that Vandecar fails to state a claim for injunctive
     relief, Plaintiff's sole request for injunctive relief is in her ADA claim for retaliation
27   (Claim 7) (ECF No. 94, ¶ 298), where she requests removal and expungement of
     disciplinary history from Plaintiff's record. The Court declines to address the
28   appropriate relief for this claim at this early stage.

or equitable in nature." *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991). Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3). Some statutes, including Title II of the ADA, abrogate state sovereign immunity. *See United States v. Georgia*, 546 U.S. 151, 153–54 (2006). The Eleventh Amendment does not bar claims for damages against state officials sued in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992).

### i. NDOC as a Party

Absent a waiver, the State of Nevada is generally immune from suit in federal court under the Eleventh Amendment. NRS 41.031(1). Plaintiff's state claims and § 1983 claims against the State of Nevada are barred by Sovereign Immunity, but not her claims under Title II of the ADA.

Plaintiff cannot sue the State of Nevada for state-law claims in federal court. *Id.*; NRS 41.031(3); *O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982). Nor may Plaintiff raise 42 U.S.C. § 1983 claims against the state of Nevada because states are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In an official-capacity suit under § 1983, the party being sued is the government entity, not the official. *Id.* at 166. An official-capacity suit against a state official for damages may therefore not proceed under § 1983 because such a suit would be against the State, and there is no § 1983 liability for damages against States.

By contrast, an action under Title II of the ADA may proceed against a prison official in his or her official capacity or the public entity responsible for the alleged discrimination, including an agency of the State of Nevada like the NDOC. *See United States v. Georgia*, 546 U.S. 151, 153–54 (2006). Plaintiff's ADA claims against NDOC are not barred by sovereign immunity. Accordingly,

1   Defendants' motion to dismiss is denied as to Plaintiff's ADA Title II claims
2   against NDOC.

3                          **ii.  State Law Claims**

4          Defendants seek to dismiss Plaintiff's state tort and Nevada Constitutional
5   claims against Defendants. As mentioned above, none of Plaintiff's damages
6   claims may proceed against the State or officers in their official capacities. While
7   Defendants are correct that the Eleventh Amendment bars Plaintiff from seeking
8   relief under state tort claims in federal court, Plaintiff's Nevada Constitutional
9   damages claims against officers in their personal capacities may proceed.

10         Nevada tort claims may not proceed against state officials in federal court.
11  NRS 41.0337 provides that Nevada state torts may only be brought against a
12  state officer or employee if the state and its appropriate political subdivision are
13  "named a party defendant under NRS 41.031." Because of this rule, the State of
14  Nevada is an indispensable party in such a tort claim. As explained above,
15  however, Plaintiff cannot initiate damages claims against the State of Nevada in
16  federal court. This means that such state tort claims can only be brought in
17  state, not federal, court.

18         Plaintiff's damages claims (Claim 13) arising out of the Nevada
19  Constitution, however, may proceed against state employees in their personal
20  capacities. *See Mack v. Williams*, 522 P.3d 434 (2022). In *Mack*, the Nevada
21  Supreme Court recognized a private right of action for money damages under
22  Article 1, § 18, of the Nevada Constitution for unreasonable searches and
23  seizures. *Id.* at 450. Plaintiff seeks relief under this provision of the Nevada
24  Constitution and has stated a claim as such.

25         Plaintiff also seeks damages under Article 1, §§ 6, 8, and 9 of the Nevada
26  Constitution, alleging cruel and unusual punishment, due process violations,
27  and freedom of speech violations, respectively. *Mack* provides the framework for
28  establishing whether a provision of the Nevada Constitution contains a right of

action and whether that right of action permits damages actions. *See Mack*, 522 P.3d at 444 (citing *Katzberg v. Regents of Univ. of Cal.* 58 P.3d 339, 342-43, 350 (Cal. 2002)). Defendants have not raised the issue of whether claims for retrospective monetary relief under Article 1, §§ 6, 8, and 9 of the Nevada State Constitution are cognizable. These claims may proceed at this stage.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claims for damages under the Nevada Constitution against Defendants in their personal capacities (Claim 13) and grants it with respect to Plaintiff's state tort claims for negligence (Claims 9), intentional infliction of emotional distress (Claim 10), concert of action (Claim 11), and abuse of an older person (Claim 12) of the FAC, which claims are dismissed in their entirety.

### iii.  Personal Capacity

Defendants seek dismissal of all money-damages claims against NDOC personnel by arguing that Plaintiff failed to clearly allege that those Defendants are being sued in their individual capacity.[3] Plaintiff counters that her damages claims against "individual" defendants sufficiently allege that those officers are being sued in their individual capacities.

A personal- or individual-capacity suit seeks to hold the officer personally liable for wrongful conduct taken in the course of her official duties. *Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015). State officials sued in their personal capacity are persons for purposes of § 1983. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (stating that "plaintiffs may seek damages against a state official in his personal capacity"). Such personal- or individual- capacity suits avoid the Eleventh Amendment bar on official capacity suits against states, state agencies, and state officials, none of which are persons for purposes of 42 U.S.C.

---

[3] Although Defendants argue that none of the individual defendants were personally served (ECF No. 104), they failed to raise insufficient service of process in their personal capacity as a defense under Fed. R. Civ. P. 12(b)(4). This defense is waived if not included in responsive pleading or a motion. *Id.* Fed. R. Civ. P. 12(h).

§ 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Cornel v. Hawaii*, 37 F.4th at 531.

The Ninth Circuit presumes that a plaintiff is suing individual defendants in their personal capacities if the plaintiff seeks damages from those individual defendants. *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) (citing *Price v. Akaka*, 928 F.2d at 828); *see Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999); *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).

Here Plaintiff succeeds in stating a claim against Defendants in their personal capacities. As in *Shoshone-Bannock*, Plaintiff seeks damages under Section 1983 against all officials named in the complaint, and unlike *Shoshone-Bannock*, there is no ambiguity about whether only some officials are being sued in their personal capacities. The Court denies Defendants' motion to dismiss claims on this basis.

### B.    Plaintiff's Amendments Relating to Cataracts

Defendants argue that Plaintiff's ADA claims arising out of Defendants' alleged failure to provide her cataract treatment, including her addition of Dr. Minev as a Defendant, are time-barred. Although the parties dispute the applicable limitations period, the Court finds that the applicable period is four years and that Plaintiff's ADA claims are timely.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to discrimination by [any State, department, agency or other instrumentality of a State]." 42 U.S.C. §§ 12131(1), 12132. Because Congress did not specify a statute of limitations for Title II of the ADA, *see id.* §§ 12131 to 12134, courts in the Ninth Circuit fill the gap with the statute of limitations of the most analogous state-law claim. *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) (cleaned

1    up). In *Sharkey*, the court held the most analogous California statute to Title II

2    of the ADA was California Government Code § 11135, which provides a three-

3    year statute of limitations. 778 F.3d at 771.

4         Applying *Sharkey*, the most analogous Nevada law to Title II of the ADA is

5    Article 1, § 24, of the Nevada Constitution, Nevada's Equal Rights Amendment

6    (ERA), which states in relevant part that "[e]quality of the rights under the law

7    shall not be denied or abridged by this State or any of its political subdivisions

8    on account of . . . disability." The ERA is Nevada's closest analogy to ADA Title II

9    claims because it prohibits disability discrimination by States and their

10   subdivisions. Additionally, the ERA resembles California Government

11   Code § 11135, the statute that the Ninth Circuit found best resembles Title II of

12   the ADA in California. *Compare* Cal. Gov. Code § 11135(a), *with* Nev. Const.

13   art. 1, § 24; *Sharkey*, 778 F.3d at 771.

14        Though the parties suggest other analogous statutes with limitation

15   periods of one, two, and three years, none is as analogous as the anti-

16   discrimination provision under Nevada's ERA. Defendants point to NRS 651.070,

17   Nevada's statute prohibiting discrimination in public accommodations, which

18   has a one-year statute of limitations, or personal injury and § 1983 claims, which

19   have a two-year statute of limitations. (ECF No. 108 (citing *Belssner v. Nevada*,

20   No. 2:15-CV-00672-APG-PAL, 2017 WL 2990848 (D. Nev. July 12, 2017) (one-

21   year statute of limitations); *see Funke v. Hatten*, No. 2:19-CV-01335-RFBEJY,

22   2021 WL 2346003, at *9 (D. Nev. June 8, 2021) (two-year statute of limitations)).

23   Plaintiff points to *Brizuela v. City of Sparks*, which holds that the statute that

24   best complies with *Sharkey* is NRS 11.190(3)(a), which sets a three-year statute

25   of limitations for "an action upon a liability created by a statute, other than a

26   penalty or forfeiture." (ECF No. 106 (citing No. 3:19-CV-00692, 2022 WL

27   3229389 (D. Nev. Aug. 10, 2022), *rev'd in part on other grounds*, No. 22-16357,

28   2023 WL 5348815 (9th Cir. Aug. 21, 2023)). None these statutes specifically

11

provide for a claim against the state for disability discrimination, though the Court finds the analysis in *Brizuela* most convincing otherwise. The ERA more closely corresponds to ADA Title II claims than any of the other claims suggested because it provides a right of action against the state for disability discrimination.

The statute of limitations for claims under the ERA is four years. Nevada provides a four-year statute of limitations for claims without an express statute of limitations. NRS 11.220. Because the ERA lacks an express statute of limitations, the four-year statute of limitations under NRS 11.220 applies to ADA Title II disability discrimination claims against the State of Nevada.

Returning to Plaintiff's claim, the Court finds that fewer than four years elapsed between June 16, 2020, when Defendant Minev responded to Plaintiff's grievance, and April 25, 2023, when Plaintiff moved to amend her complaint (ECF No. 83). ADA claims (FAC claims 6 and 7) were added to the complaint before the expiration of the statute of limitations and survive this argument.

## IV.   CONCLUSION

It is therefore ordered that:

All claims against Defendant State of Nevada, ex rel., Nevada Department of Corrections except Claims 6 and 7, alleging disability discrimination under Title II of the ADA, are dismissed with prejudice and without leave to amend.

All state court claims sounding in tort (claims 9 – 12) are dismissed against all Defendants without prejudice and without leave to amend.

Defendants' motion to dismiss Plaintiff's claim for injunctive relief (claim 7) is denied.

//

//

//

1         Defendants' motion is denied with respect to Plaintiff's remaining claims

2    for damages (1-8, and 13), and these claims remain following this Motion to

3    Dismiss.

4

5         DATED THIS 30th day of September, 2024.

6

7    _____

8    ANNE R. TRAUM
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28